IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Julie Augustine,<br><br>Plaintiff,<br><br>        v.<br><br>El Conquistador Partnership, LP, et al.,<br><br>Defendants. | **Civil No. 14-1224 (SEC)** |

**OPINION & ORDER**

    Pending before the Court is a motion for partial summary judgment on the issue of liability filed by Plaintiff Julie Augustine. See Docket # 26. Defendant El Conquistador Partnership, LP (Defendant, or the "Hotel"), timely filed its response. See Docket #33. For the reasons that follow, Plaintiff's motion is denied.

**I.     Background**

    Plaintiff worked as a pharmaceutical sales representative for AbbVie International. During the week of September 13, 2013, she attended an AbbVie convention held at the El Conquistador Resort in Puerto Rico. For the first few days, Plaintiff shared a room with Sharon McCarthey. However, McCarthey later checked out and left Plaintiff with the room to herself.

    At approximately at 2:00 a.m. on the night of the incident, hotel security received a call regarding a locked-out guest for Plaintiff's room, numbered 3503. Defendant dispatched a guard, Melvin García (García), to handle the situation. Docket # 26-2, ¶ 13. Upon arriving at room 3503, García observed a visibly drunk female guest, Julie McNees (McNees), sitting beside the door. Id., ¶ 14. He could also smell alcohol on her breath. Docket # 33-1, ¶ 28. McNees allegedly told García that she

needed to enter the room because her "friends were inside." Docket # 26-2, ¶ 15. McNees also provided García a hotel-issued card that was "not entirely legible," see Docket # 26-2, ¶ 21, but that "clearly showed room number 3503." Docket # 33-1, ¶ 29. The card "was visibly wet, as if [McNees] had gotten out of the pool area." Id. It is unclear whether McNees could have used this card to access Plaintiff's room.

In these situations, the hotel's policy requires the security guard to ask the locked-out guest to provide a photo-ID. If there is a guest already inside the room, the guard must confirm that the person attempting to enter is either registered to the room, or has permission to enter. If the guest is asleep, the guard must at least "pound" on the door before attempting to open it. Docket 26-2, ¶ 24. García did not follow this protocol, and instead opened the door with his master keycard. Docket 26-2, ¶ 24. But the door did not open because Plaintiff had engaged the manual security latch from inside the door. Id., ¶ 17. While the hotel has a tool used to open these latches from the outside, it was broken on that day, and so García used his personal ID to jiggle the latch open. Id., ¶ 19. With the door open, McNees stepped into the room, and García closed the door. Docket 33-1, ¶ 32. García then "stood outside the room for about five to ten seconds, looking at the door, listening for anything, and then continued making his rounds." Id.

The parties' accounts diverge significantly concerning what happened once McNees entered the room. Because this is central to the analysis, the Court shall discuss it in more detail below. The short of it is that McNees entered into the room and allegedly touched Plaintiff inappropriately. Plaintiff claims that she suffered damages resulting from McNees' advances, including the loss of her job and her subsequent divorce, and now attempts to pin responsibility for these damages on Defendant.

## II. Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). When conducting this analysis, courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

If the party who moves for summary judgment bears the ultimate burden of proof at trial, as is the case here, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." Winnacunnet Co-op. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 84 F.3d 32, 35 (1st Cir. 1996). "In response, the non-moving party must either submit a supportable request for additional discovery time or produce evidentiary materials that demonstrate the existence of a genuine issue for trial." Id. (internal citations and punctuation marks omitted). "[I]n so doing, that party may not rest on mere allegations or denials of his pleading." Id.

Under this rigorous standard, summary judgment is proper "only if no reasonable finder of fact could find for the nonmoving party after evaluating the moving party's proffer in this light." EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados, 279 F.3d 49, 55 (1st Cir. 2002) (citing Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986)).

### III. Analysis

Plaintiff brings this action under Puerto Rico's general tort statute, Article 1802 of the Civil Code, which provides that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. In order to succeed on an Article 1802 claim, a plaintiff must establish "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Soc. Gananciales v. Padín Co., Inc., 17 P.R. Offic. Trans.

111, 117 P.R. Dec. 94 (1986). The concept of negligence under Article 1802 is broad – "as broad as the behavior of human beings" – and covers "any fault that causes harm or injury." Bonilla v. Chardón, 18 P.R. Offic. Trans. 696, 709, 118 P.R. Dec. 599 (1987) (quoting Colón v. Romero–Barceló, 112 P.R.Dec. 573, 579 (1982)).

While the existence of liability for negligent actions is fairly straightforward, liability for omissions adds a wrinkle to this analysis. This type of liability is generated only when the defendant breaches an identifiable duty of care; that is, that the injury occurred because defendant failed "to conform to a certain standard of conduct for the protection of others against unreasonable risk." Zabala–Calderón v. U.S., 616 F.Supp.2d 195, 199 (D.P.R. 2008).

This duty of care may arise in one of three ways: "(1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." De–Jesus–Adorno, 160 F.3d 842. Moreover, "the duty is defined by the general rule that one must act as would a prudent and reasonable person under similar circumstances." Vázquez–Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007) (citing Ortíz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic Trans. 407, 101 P.R. Dec. 290 (1973)). Although a defendant's duty of care calls for the anticipation of reasonably probable injuries to probable victims, Marshall v. Pérez Arzuaga, 828 F.2d 845, 847 (1st Cir.1987), "the foreseeability required under [Article] 1802 does not extend to all imaginable effects resulting from defendant's conduct." Wojciechowicz v. United States, 576 F.Supp.2d 241, 270–72 (D.P.R. 2008) (citing De–Jesus–Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998)), aff'd, 582 F.3d 57 (1st Cir. 2009). "This would be tantamount to turning the defendant into an absolute insurer of its acts and omissions." Id. Here, the parties do not dispute that Defendant, as the owner and operator of the El Conquistador Hotel, owes a duty of care and protection towards its guests.

With these general principles in mind, the Court turns to the facts of this case. Here, Plaintiff hangs her entire argument for liability on the undisputed fact that Defendant's security officer did not follow the correct protocol in order to give McNees access to Plaintiff's room.[1] In so doing, Plaintiff claims that Defendant breached their duty to protect Plaintiff from unauthorized intrusion into her room. Furthermore, Plaintiff claims that the damages she suffered – resulting from the alleged criminal acts of a third party[2] – were reasonably foreseeable, and thus, that Defendant is liable for the damages that ensued.

The Court is not convinced that Plaintiff has met the demanding standard of proving entitlement to a directed verdict on the issue of liability. While Plaintiff puts forth a strong argument concerning Defendant's negligence in allowing McNees access to the room, Article 1802 also requires proof that the plaintiff suffered damages, and a causal nexus connecting the defendant's negligence to those damages. After carefully assessing the parties' submissions, the Court finds that there are triable issues of fact concerning those last two requirements. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."). A summary of the parties' competing versions concerning the events that transpired after McNees entered the room sets the stage for this analysis.

For her part, Plaintiff claims that she told McNees to leave, but that McNees refused. McNees then got into Plaintiff's bed, where she allegedly "began touching Plaintiff on her arms, her forearms, and tried to massage her shoulders and her breasts,

---

[1] Defendant admits that its security officer's conduct did not comport to the hotel's general policy in this regard. However, Defendant does argue that the hotel's policy did not actually address the particular situation as it occurred in this case, and that the security officer acted in a reasonably prudent manner in handling the situation. Under the circumstances, argues Defendant, his actions were not negligent. Since the Court finds that triable issues of fact exist on other grounds, there is no need to express an opinion on this point.

[2] Plaintiff cites various cases for the proposition that the criminal acts of a third party are reasonably foreseeable under these circumstances. But there is no evidence that McNees was ever charged or convicted with a crime.

her buttocks and vagina, including her vaginal labia, and hip and thigh." Docket # 26-2, ¶ 32. McNees "straddled" Plaintiff, making Plaintiff feel like she "was being mounted." Id., ¶ 33. She also complimented Plaintiff's "sweet tits." Id. at ¶ 34. Faced with these advances, Plaintiff curled up into a fetal position, where she remained "paralyzed through the night." Id. at ¶¶ 35.

Defendant disputes the characterization of Plaintiff's testimony, and – as the Court understands it – argues that a reasonable jury could also conclude that Plaintiff did not actually object to McNees' presence inside the room.[3] To provide context for this argument, Defendant points to various pieces of evidence that could allow a reasonable jury to conclude that Plaintiff and McNees were actually close acquaintances. Earlier that week, for instance, Plaintiff and McNees took a kayak trip to the bioluminescent bay in Fajardo. See Docket 33-1, p. 24 ¶ 12-13. Indeed, the record contains various pictures showing Plaintiff and McNees in a two-person kayak on that night. Id. at 14. The next day, Plaintiff and McNees shared a table at an AbbVie-sponsored dinner. Id. at ¶ 16.

In the early evening hours on the night of the incident, McNees sent various text messages to Plaintiff. In one of these, McNees told Plaintiff that she knew that Sharon, Plaintiff's previous roommate, "is not there" and asked Plaintiff to let her in the room.[4] Plaintiff admits that she heard the door open, but that she did not react. Docket # 33-1, ¶ 27. Moreover, Plaintiff admits that she offered McNees to sleep in the bed next to hers. Id., ¶ 36.

Now, Defendant does not deny that McNees eventually ended up in Plaintiff's bed, or that McNees attempted to touch Plaintiff. However, it does point out that both women were fully clothed, that McNees never reached under Plaintiff's clothes, and that McNees never attempted to kiss Plaintiff that evening. Docket # 33-1, ¶ 37-40. It

---

[3] One of the inferences, of course, is that there is a triable issue on whether Plaintiff would have let McNees enter the room in any event, thus breaking the chain of causality as to the hotel. The other is that Plaintiff did not actually suffer any damages from McNees' advances. The Court offers no opinion on these points, but rather holds that they must be submitted to the consideration of a jury.
[4] A point in Plaintiff's favor is that Plaintiff never responded to any of McNees' text messages.

also highlights evidence that could allow a reasonable jury to conclude that Plaintiff did not reject McNees' advances, or was not otherwise bothered by them. Indeed, Plaintiff admits that after some time, McNees "passed out." Id., ¶ 46. But even after this happened, Plaintiff did not attempt to move, switch beds, or leave the room. Id. at ¶¶ 47-49. In fact, they remained in the same bed until the alarm rang the next morning.

The following morning, Plaintiff got up and went to the bathroom while McNees was still in the room. Id. at ¶ 55. While Plaintiff was taking a shower, McNees left the room. Id. at ¶ 56. "At one point after [Plaintiff] was out of the shower, she heard McNees come back to her room and knock on the door, and [Plaintiff] in turn opened her door." Id. at ¶ 57. McNees then asked Plaintiff to stop by her room before she left. Plaintiff complied. Upon arriving at McNees' room, Plaintiff knocked on the door. McNees "opened the door, went out into the hall," hugged Plaintiff and gave her a kiss on the neck, and told her that she could not wait to see her again." Id. at ¶ 51.

As mentioned before, Plaintiff also blames the loss of her job and the divorce from her husband on the alleged sexual assault. Defendant counters, however, that these damages are wholly unconnected to the alleged assault. Plaintiff admits, for instance, that she was not happy with various employment decisions taken by AbbVie. See e.g. Docket # 33-1, ¶ 68. On the other hand, there is evidence on the record showing that Plaintiff had marital troubles that predated the incident at the core of this case. Id. at ¶ 65-66.

These facts, taken in unison, defeat the notion that Plaintiff's evidence on liability is "conclusive." Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998). A reasonable jury could find that Plaintiff did not (at least initially) object to McNees' entry into her room; for instance, because she was a close acquaintance and because Plaintiff offered McNees to sleep in her room. From these same facts, the jury could also find that Plaintiff would have let McNees inside the room anyways. This would sever any connection between Defendant's negligence and Plaintiff's

alleged damages, or at least serve as an intervening cause between them. A reasonable jury could also conclude that Plaintiff did not reject McNees' advances, even though she could have done so, as evidenced by the fact that they remained in the same bed for an entire night, and because of the events that transpired on the following morning. In the end, because "reasonable minds could differ as to the import of the evidence," Wilkerson v. McCarthy, 336 U.S. 53, 62 (1949), which is the standard for the denial of a directed verdict, summary judgment as to the issue of liability is improper here.

### IV. Conclusion

For the reasons stated above, Plaintiff's motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge